# WRIGHT v. MILLER.

No. 15274—Opinion Filed Feb. 17. 1925.

Rehearing Denied March 17, 1925.

### Sales — Machinery — Implied Warranty — Waiver of Breach—Acceptance.

Where machinery is purchased for a consideration in part cash and in part deferred payments, and after installation such machinery is used continuously for nearly a year until the final deferred payment falls due, when that payment is met by a cash installment of one-half and the execution of a new note for the balance with no claim then made of a breach of the implied warranty, the purchaser is therafter estopped to set up such defense in an action brought on the renewal note, or to file a counterclaim for damages based thereon, acceptance being complete after lapse of a reasonable time with knowledge of the al-

leged defects, or with opportunity for acquiring such knowledge.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by David A. Wright against B. F. Miller on promissory note. Judgment for defendant, and plaintiff brings error. Reversed.

This action was commenced June 21, 1922, by the plaintiff filing his petition in the district court of Creek county to recover of and from the defendant the sum of $500 upon a certain promissory note dated June 10, 1921. The petition was in the usual form of actions of this character.

For his answer defendant filed a general denial, except that he admitted the execution and delivery of the note sued on. As affirmative defense defendant alleged, in substance, that his signature to the note in question was obtained by fraud and misrepresentation in that the machinery, equipment, etc., for which the note was given in part payment, was not of the kind and character represented to defendant by plaintiff; that said machinery, equipment, etc., was defective and unsuitable for the purposes for which it was purchased, but that defendant did not know this fact at the time of signing said note. By way of cross-petition defendant claimed damages in the sum of $1 500 alleged to have been suffered by him by reason of the misrepresentations made by the plaintiff.

Plaintiff replied to the answer of the defendant denying the allegations of new matter therein contained, and upon the issues thus framed the cause was tried to the court without a jury on October 25, 1923, resulting in a judgment in favor of defendant and denying recovery to the plaintiff. After unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

Earl R. Powers, for plaintiff in error.

Hughes, Foster & Ellinghausen, for defendant in error.

Opinion by LOGSDON, C. Plaintiff has assigned numerous errors in his petition in error and has presented each by argument and authorities in his brief, but in the view taken of the case here it will only be necessary to consider the third and sixth. By reason of the relation of these propositions to each other they will be considered together, and the question for determination may be stated thus: Are the allegations and proof of the defendant sufficient to establish fraud and misrepresentation, and has the defendant by his acts estopped himself from setting up the defense of breach of implied warranty against plaintiff's right of recovery on the note?

It appears that in 1920 defendant became the president and controlling owner of a corporation known as the Chadderdon-Nelson Tool & Supply Company. During the early part of 1920 defendant, accompanied by the chief mechanic of his company, went to Chicago for the purpose of selecting and purchasing certain machinery and equipment to install in the company's plant at Slick. All of the machinery and equipment purchased was inspected in Chicago with the exception of a lathe and a pipe machine. For the purpose of inspecting these, defendant's mechanic, accompanied by an employe of plaintiff, went from Chicago to Cleveland, Ohio, to the plant of the company which manufactured these two machines. Defendant thereupon placed his order with plaintiff for the machinery and equipment selected, the purchase price amounting to more than $16,000, a part of which was paid in cash and the balance evidenced by trade acceptances and by notes. The machinery and equipment was shipped and installed in the plant of the company at Slick, and thereafter the trade acceptances and notes were duly paid until the maturity of the last note for $1.000. When this matured about June 1, 1921, defendant made a payment of $500 thereon and secured an extension on the other $500, to evidence which the renewal note herein sued on was executed.

To sustain the affirmative defense which he had alleged defendant placed L. W. Chadderdon upon the witness stand. This witness was the same person who accompanied the defendant to Chicago on his purchasing trip. On direct examination, in reference to the defects in the machinery and the misrepresentations claimed to have been made, he testified:

"Q. What kind of machinery did you order? A. Well the one that really caused most of the trouble was the hangers. Q. Tell the court what kind of hangers you ordered. A. Ring oiler hangers. Q. What kind of hanger did you receive? A. An old plain common hanger with babbited parts. Q. How many hangers all together? A. I think there were eight. * * * Q. What other

machinery did you order that you did not receive? A. All of the pulleys were supposed to be split cut pulleys. Q. Is that the kind of pulleys you ordered from Mr. Wright? A. That is the kind ordered. Q. What kind of pulleys did you receive? A. We received wood pulleys and them poor at that. * * * Q. Now Mr. Chadderdon, what other material did you order that was not shipped to you? A. Why mostly was the pulleys and hangers. The pipe machine that never worked right, the one that came from Bignall-Keller. * * * Q. Any other parts? A. The Wringley hangers and pipe machine and pulley machines. That was all that was bad. Well, I will say another additional thing. Well, we will let that go; just the hangers, pulleys and pipe machine."

On cross-examination he testified in reference to the pipe machine as follows:

"Q. Did you ever offer to return it to the plaintiff? A. I tried to make it right. I wrote to the Bignall-Keller Company myself three or four letters. I wrote him a letter and told him I found out what I thought was wrong with it; and I told him if he would advertise and tell all his customers to use pure highly strained oil, they would have no trouble with it. Q. You were looking to the Bignall-Keller Company to make it good? A. No, sir. Q. Is there a guarantee by the concern that makes these machines? A. I don't know."

There was no testimony offered or introduced on behalf of defendant showing or tending to show that any representations or warranties of an express nature were made in reference to the machinery and equipment purchased. The only warranty, therefore, to be considered is the implied warranty that the machinery sold is suitable for the purpose for which it was sold. It appears from the testimony of Mr. Chadderdon that the real basis of complaint which he had was as to the pulleys and hangers. These pulleys and hangers were installed promptly in the plant at Slick, and it is to be inferred from his testimony that the hangers are still in use, although he testified that he replaced the pulleys with others which he liked better. The pipe machine of which complaint is made is shown by his testimony to have required a certain grade of oil in order to obtain the best results from its use. Some defect is mentioned in reference to the dies in this machine, but all of these defects were known to the defendant, or could by the exercise of reasonable diligence have been known, long prior to the maturity of the note for which the renewal note in suit was given. No offer was ever made to return the machinery or any part of it, and no question was raised as to the validity of the $1,000

note at its maturity, but defendant secured an extension on that indebtedness by the payment of one-half of it and the execution of the new note. Under such circumstances this court has consistently held that there is a waiver of the defects now complained of, and that the defendant is estopped from relying upon alleged misrepresentations or breach of implied warranties as against his liability on a note executed with full knowledge, or with opportunity to acquire full knowledge of the defects now claimed to exist, and at a time when he was using and enjoying all of the benefits of the machinery purchased and installed by him. Brown v. Davidson, 42 Okla. 598, 142 Pac. 387; Spaulding v. Howard, 51 Okla. 502, 152 Pac. 106; Simonoff v. Parsons, 52 Okla. 600, 153 Pac. 152; Talley v. Harrison, 60 Okla. 110, 159 Pac. 366; Emerson-Brantingham Implement Co. v. Ware, 71 Okla. 19, 174 Pac. 1066.

It is, therefore, concluded that the trial court erred in holding that the evidence sustained the defense interposed in this action, and in rendering judgment in favor of the defendant. For the reason that there is no evidence in the record reasonably tending to support the judgment this cause should be reversed and remanded, with directions to grant plaintiff a new trial herein.

By the Court: It is so ordered.